| | |
|---|---|
| FABIAN WADE,<br><br>    Plaintiff,<br><br>    v.<br><br>KAY JEWELERS, INC., STERLING JEWELERS, INC., GGP, INC., AND JANE & JOHN DOES, 1–5<br>    Defendant. | No. 3:17-cv-990 (MPS) |

**RULING ON MOTIONS TO DISMISS**

Plaintiff Fabian Wade ("Wade") brings this suit based on an incident at the Buckland Hills Mall where he was identified by employees of Kay Jewelers as a suspect in a prior theft and credit card fraud and questioned by mall security personnel and police. (ECF No. 36.) Wade sued the owner of the Kay Jewelers store, defendant Sterling Jewelers, Inc. ("Sterling"),[1] the mall owner, GGP, Inc. ("GGP"), and numerous Jane and John Does, asserting six claims arising from the incident: (1) violation of 42 U.S.C. § 1981; (2) false imprisonment; (3) defamation *per se*; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; and (6) negligent supervision. Defendant GGP impleaded Professional Security Consultants, Inc. ("PSC") as the alleged employer of mall security personnel and asserted claims for negligence, common law indemnification, and contractual indemnification. (ECF No. 57.) Sterling and GGP now move to dismiss Wade's amended complaint under Rule 12(b)(6) (ECF Nos. 42, 45), and PSC moves to dismiss part of GGP's third-party complaint under Rule 12(b)(6). (ECF No. 70.) For the reasons that follow, I GRANT in part and DENY in part all three motions.

---

[1] Sterling has repeatedly asserted that there is no such entity as "Kay Jewelers, Inc.," which is simply a trade name for Sterling. The Amended Complaint likewise alleges that Kay Jewelers, Inc. is a "non-existent" entity (ECF No. 36 at ¶ 9). Accordingly, the Clerk is directed to terminate Kay Jewelers, Inc. as a defendant.

# I.     Factual Background

I briefly recite the relevant factual background as set forth in Wade's amended complaint. (ECF No. 36 (hereinafter "Am. Compl.").)  Wade, a black, African-American male, went to the Kay Jewelers store/booth at Buckland Hills Mall in Manchester, CT on Saturday, March 18, 2017. (Am. Compl. at ¶¶ 13–15.)  Wade asked an employee if he could look at some earrings, which the attending employee showed him but refused to take out of their glass case.  (*Id.* at ¶¶ 16–18.)  Wade decided not to buy the earrings and walked away from the Kay Jewelers store/booth.  (*Id.* at ¶ 19.)

Within a few minutes, an undercover security or loss prevention officer for the mall, Jane Doe 3, stopped Wade and told him that one of the Kay Jewelers Individual Defendants[2] (either defendant Jane Doe 1 or Jane Doe 2) had identified Wade as an individual they suspected had been robbing Kay Jewelers over the past few months.  (*Id.* at ¶¶ 20–22.)  According to the police report of the incident, one of the Kay Jewelers Individual Defendants had called mall security, who in turn called the police, to report Wade for possible ID theft and credit card fraud.  (*Id.* at ¶ 35.)  Wade believed that the Kay Jewelers Individual Defendants had "identified [Wade] because of his skin color and because [he] fit their idea of a shoplifter."  (*Id.* at ¶ 41.)

Shortly after Wade was stopped, Jane Doe 3 was joined by another mall security officer, John Doe 1, and Officer Decker of the Manchester Police.  (*Id.* at ¶ 23.)  Jane Doe 3, John Doe 1, and Officer Decker surrounded Wade, "with Officer Decker in front facing [Wade] and Jane Doe 3 on one side of [Wade] and John Doe 1 on the other side of [Wade], confining [Wade] . . . [and] forcing [Wade] to stay in the space, from where he could not leave."  (*Id.* at ¶ 26.)  Officer Decker

---

[2] For ease of reference, I refer to defendants Jane Doe 1 and Jane Doe 2 as the "Kay Jewelers Individual Defendants" and defendants Jane Doe 3, John Doe 1, and John Doe 2 as the "Mall Security Individual Defendants."  (Am. Compl. at ¶¶ 11–12, 24–25.)

told that Wade that a Kay Jewelers employee had told Officer Decker when he responded to the call that Wade was the suspect. (*Id.* at ¶ 27.) Officer Decker demanded to see Wade's ID and asked about Wade's credit cards. (*Id.* at ¶ 28.) Officer Decker radioed in Wade's ID and, while holding onto the ID, "forc[ed] [Wade] to walk downstairs with him" to the Kay Jewelers booth/store, despite Wade's repeated requests to return his ID. (*Id.* at ¶¶ 29–31.) At some point, Wade called his lawyer, soon after which the stop ended and Wade left. (*Id.* at ¶ 34.). Wade was shaken up by the incident, has had flashbacks, believes his reputation has been harmed, and alleges that he now has a public record as a result Officer Decker running his ID through the Manchester Police system. (*Id.* at ¶¶ 47–51.)

The amended complaint pleads on information and belief that Kay Jewelers "top management practice and believe in discrimination . . . creating a corporate culture where Kay Jewelers store employees routinely and disproportionately" discriminate against African-Americans for suspicion of criminal activity. (*Id.* at ¶ 52.) The amended complaint further asserts that the Kay Jewelers' "employees and loss prevention/security personnel were not properly trained or supervised to prevent Kay Jewelers' employees from targeting African-Americans and people of color" for suspected criminal activity, and were also not "properly trained or supervised" in connection with "accusing customers" of criminal activity and alerting law enforcement personnel of the same. (*Id.* at ¶ 53.)

Sterling deposed Wade about the incident before Wade filed the complaint; Wade was represented by his counsel at the deposition. (*See, e.g.*, ECF No. 43-1 at 2–147 ("Wade Tr.").) After Wade filed suit, Wade amended his complaint, and Sterling and GGP moved to dismiss. (ECF Nos. 36, 42, 45.) GGP filed a third party complaint against PSC, and PSC then moved to dismiss part of the GGP's third party complaint against it. (ECF No. 57, 70.)

## II. Legal Standard

On a motion to dismiss, I take the plaintiff's factual allegations in the complaint "to be true and [draw] all reasonable inferences in" his favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In addition, the "court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)

"In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). In the last category, a document is deemed integral to the complaint, and thus appropriately considered on a motion to dismiss, "where the complaint relies heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough.").

## III.    Discussion

As a threshold issue, both Sterling and GGP attach the transcript of Wade's sworn pre-suit deposition testimony to their motions to dismiss and argue that the Court should treat the transcript as incorporated because the amended complaint heavily relies on it.  (ECF No. 43 at 7–19; ECF No. 45-1 at 2–3.)  Wade concedes that the transcript should be incorporated for the purposes of the parties' motion to dismiss.  (ECF No. 50 at 4 ("GGP correctly argues Mr. Wade's sworn deposition is proper for consideration for GGP's Motion to dismiss.").)  The amended complaint does not cite or reference the deposition transcript itself; however, large portions of the complaint either quote without attribution (Am. Compl. at ¶¶ 14, 16, 17, 18, 20, 21, 22, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 46, 47, 48, 49, 50, 51) or paraphrase Wade's deposition testimony (*id.* at ¶¶ 13, 15, 19, 23, 27, 29, 41, 47).  In other words, not only does Wade agree that he heavily relied on the transcript in drafting the complaint, but the deposition transcript supplies almost one-third of the allegations in the complaint either verbatim or in paraphrased form.  Though usually incorporation of "integral" documents is applied to legal documents like contracts, I conclude that the transcript should be considered here because of Wade's extensive reliance on it in drafting the complaint. *See Washington v. Gonyea,* 538 F. App'x 23, 26 n.3 (2d Cir. 2013) ("[I]ncorporation of the transcript is proper because the complaint relies heavily on the hearing transcript."); *cf. Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 268 (E.D.N.Y. 2011) (declining to consider deposition transcript because the complaint did not make any reference to it and the plaintiffs did not "purport to have relied on [the] deposition in crafting the allegations").

However, I only consider the transcript for a limited purpose: if the complaint incorrectly quotes or paraphrases the transcript, I may consider Wade's testimony for the contents of his statements, but I may not consider Wade's deposition testimony for its truth or to contravene a

statement in the amended complaint. *See Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007) ("[S]uch documents may properly be considered only for 'what' they contain, 'not to prove the truth' of their contents."); *see also Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (reversing district court's dismissal where district court considered non-integrated transcript "to make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint"). A lawyer is not confined to the personal knowledge of his client when he drafts a complaint. He may also rely on other sources of evidence, and he may further investigate a claim after his client testifies to correct or supplement his client's own personal knowledge of the facts. Thus, the Court is not free to disregard an allegation in a complaint simply because it contradicts the plaintiff's pre-complaint testimony. Nonetheless, because I may consider the transcript, I decline Sterling's alternative request to convert its motion into one for summary judgment.[3]

Wade's amended complaint asserts six causes of action against Sterling and GGP: (1) an "equal benefit" claim under 42 U.S.C. § 1981; (2) false imprisonment; (3) defamation *per se*; (4) intentional infliction of emotional distress ("IIED"); (5) negligent infliction of emotional distress ("NIED"); and (6) negligent supervision. (Am. Compl. at ¶¶ 54–97.) Sterling and GGP have moved to dismiss the six counts for failure to state a claim. (ECF Nos. 42, 45.) GGP also moves to dismiss on the grounds that Wade has not properly pleaded that GGP is vicariously liable for the mall security personnel, who were independent contractors and not employees of GGP. (ECF No. 45-1 at 4–6.) After GGP filed its motion to dismiss, Wade withdrew his 42 U.S.C. § 1981 and

---

[3] I also decline that invitation because the plaintiff had not had a full opportunity to conduct discovery when Sterling's motion was filed. (*See* Fed. R. Civ. P. 56(d); *see* ECF Nos. 48, 51 (listing necessary discovery to oppose summary judgment motion).)

IIED claims against GGP. (*See* ECF No. 50 at 5–6, *id.* at n.1.) After addressing the issue of GGP's vicarious liability, I will address the remaining claims against each defendant.

## A.    Vicarious Liability (GGP)

GGP argues that three of the state law tort claims pending against it should be dismissed because the Amended Complaint does not properly plead vicarious liability against GGP, and the only basis for liability against GGP on those counts consists of the actions of defendants John Doe 1, John Doe 2, and Jane Doe 3 as alleged mall "security/loss prevention personnel and/or agents of the Defendants Kay Jewelers and/or GGP . . . ." (ECF No. 45-1 at 5 (citing Am. Compl. at ¶ 12).)[4]  Under Connecticut law, "a master is liable for the willful torts of his servant committed within the scope of the servant's employment and in furtherance of his master's business" under the doctrine of *respondeat superior*. *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 500 (1995).  On the other hand, "an employer is not liable for the negligence of its independent contractors" as a general rule. *See Pelletier v. Sordoni/Skanska Const. Co.*, 264 Conn. 509, 517 (2003).  GGP attaches to its motion to dismiss a copy of an agreement purporting to demonstrate that defendants John Doe 1, John Doe 2, and Jane Doe 3 were independent contractors, not employees, of GGP. (ECF No. 45-1 at 5, 192–194.)  This exhibit is not a document the Court may consider on a motion to dismiss, however, as the Court is limited to the well-pleaded allegations in Wade's complaint and documents incorporated or relied on therein.  The Amended Complaint alleges that these defendants were "security/loss prevention personnel and/or agents" of Sterling and GGP, and asserts claims against GGP based on their role as employees or agents of GGP. (Am. Compl. at ¶ 12; *id.* at ¶¶ 65 (alleging in Count 2 that "the security/loss prevention personnel

---

[4] GGP also argues that the negligent supervision claim (Count 6) should be dismissed on similar grounds, which I address in the discussion of that claim.  (ECF No. 45 at 6.)

for Kay Jewelers and GGP, Jane Doe 3, who stopped Plaintiff, pulled him aside and with John Doe 1, along with Police Officer Decker, surrounded Plaintiff . . ."), 73 (alleging in Count 3 that the "direct and proximate cause of the injuries and damages suffered by the Plaintiff as hereinafter described were the actions of the Defendants and their agents, servants and/or employees").  Of note, GGP does *not* argue that Wade has insufficiently pleaded the existence of an agency or employee relationship, but in effect argues that Wade's pleading must be read in light of its agreement.  Since the Court may not consider the agreement, I must reject GGP's argument and assess the claims against GGP on their merits.

### B.      False Imprisonment (Sterling and GGP)

"[F]alse imprisonment is the unlawful restraint by one person of the physical liberty of another." *Berry v. Loiseau*, 223 Conn. 786, 820 (1992) (citation omitted).  "To prevail on a claim of false imprisonment, the plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Id.*  In addition, "the detention must be wholly unlawful . . . ." *Lo Sacco v. Young*, 20 Conn. App. 6, 19 (1989).   "Any period of such restraint, however brief in duration, is sufficient to constitute a basis for liability."  *Green v. Donroe*, 186 Conn. 265, 267 (1982) ("The fact that there was no formal arrest of the plaintiff . . . and that he remained in the custody of the police for only ten minutes would not necessarily defeat his cause of action for false imprisonment.").  However, "[a] person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it."  *Rivera v. Double A Transp., Inc.*, 248 Conn. 21, 31 (1999) (citing *Donroe*, 186 Conn. at 268).  "Nothing less than a rather extreme brand of recklessness will substitute for the standard requirement of intention in false imprisonment cases." *Id.*

Sterling moves to dismiss the false imprisonment claim on the grounds that (1) the amended complaint does not allege that Sterling detained Wade, because the Kay Jewelers Individual Defendants did not call the police or themselves detain Wade; and (2) the amended complaint does not allege that the Kay Jewelers Individual Defendants acted with the requisite intent in misidentifying Wade to mall security.  (ECF No. 43 at 27–31.)   Wade responds that the amended complaint alleges that Sterling detained Wade because the Mall Security Individual Defendants are Sterling's employees or agents, and in any event the complaint alleges that Kay Jewelers Individual Defendants acted with the requisite intent in identifying Wade to both mall security and the police as a suspect in previous incident of attempted credit card fraud.  (ECF No. 46 at 19–21 (citing Am. Compl. at ¶¶ 20–22, 27).)

First, drawing all inferences in Wade's favor, I conclude that the Amended Complaint alleges that Sterling detained Wade.  Although the Amended Complaint does not affirmatively allege that the Kay Jewelers Individual Defendants detained Wade, it does allege that the Mall Security Individual Defendants are employees or agents of Sterling.  (*See* Am. Compl. at ¶ 12 (the Mall Security Individual Defendants are "security/loss prevention personnel and/or agents of the Defendants Kay Jewelers and/or GGP . . . ."); *id.* at ¶¶ 24, 25 (identifying Jane Doe 3 and John Doe one as "providing [] security/loss prevention services to Kay Jewelers").)[5]  The amended complaint alleges that the Mall Security Individual Defendants (specifically Jane Doe 3 and John Doe 1) detained Wade.  (Am. Compl. at ¶¶ 23, 44, 49.)  The amended complaint thus adequately pleads that Sterling detained Wade.

---

[5] Sterling argues that Wade conceded in his pre-suit deposition that none of individuals involved in detaining him worked for Kay Jewelers, but as discussed above the Court may not use the transcript to contravene Wade's complaint.  (ECF No. 53 at 7.)

Second and in any event, the Amended Complaint alleges that the Kay Jewelers Individual Defendants acted "for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." *Donroe*, 186 Conn. at 268. When all inferences are drawn in Wade's favor, the Amended Complaint alleges that: (1) the Kay Jewelers Individual Defendants called mall security to identify Wade as a suspect who had attempted to commit credit card fraud the previous week (Am. Compl. at ¶¶ 20–22, 35), and mall security called the police (Am. Compl. at ¶¶ 35, 51)[6]; (2) a Kay Jewelers employee "directed the security/loss prevention personnel for Kay Jewelers and GGP, Jane Doe 3, who stopped Plaintiff" (Am. Compl. at ¶ 65) and that (3) the Kay Jewelers Defendants "intended for Plaintiff to be stopped or detained" because they "had to know" he would be detained as a result of the police being called. (Am. Compl. at ¶¶ 38–40.) Though allegations (2) and (3) would be conclusory on their own, they are supported by specific acts the Kay Jewelers Individual Defendants took, namely: (4) after leaving Kay Jewelers, defendant Jane Doe 3 informed Wade that one of the Kay Jewelers Individual Defendants had identified him as the suspect (Am. Compl. at ¶¶ 20–22); and (5) after Wade was allegedly confined, Officer Decker told Wade that "a Kay Jeweler employee downstairs told

---

[6] Although some allegations imply that a Kay Jewelers Individual Defendant called the police (Am. Comp. at ¶¶ 38–40), others contradict that assertion and state that mall security called. (Am. Compl. at ¶¶ 20, 35.) Moreover, these particular allegations (Am. Compl. at ¶¶ 38–40) quote Wade's testimony, which he acknowledges is based exclusively on the police report of the incident. (*See* ECF No. 43-1, Wade Tr. 27:2–29:23.) The police report, which Wade's amended complaint adopts, states that the police were "CALLED BY THE MALL SECURITY." (Am. Compl. at ¶ 35.) Accordingly, I need not accept these particular allegations as true. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely.").

[Officer Decker] that Plaintiff, Wade, was the suspect and that he and others were walking around the mall looking for Plaintiff, Wade, until they found him." (*Id*. at ¶ 27.) [7]

*Bryans v. Cossette*, which Sterling relies on, is distinguishable. No. 3:11-CV-01263 JCH, 2013 WL 4737310 (D. Conn. Sept. 3, 2013). *Bryans* addressed a motion for summary judgment, not a motion to dismiss. In addition, the undisputed facts there showed that a hospital's medical staff asked its security personnel to stop a patient leaving the hospital, but did *not* ask the police officers who were solely responsible for arresting him to do so. *See* 2013 WL 4737310, at *13 (D. Conn. Sept. 3, 2013). Drawing all inferences in his favor, I conclude that Wade has plausibly alleged that the Kay Jewelers Individual Defendants directed the Mall Security Individual Defendants to stop plaintiff (Am. Compl. ¶¶ 20–22, 65), informed the police that he was the suspect (Am. Compl. ¶ 27), and *both* the Mall Security Individual Defendants and police detained him. (*See* Am. Compl. at ¶ 26.) Accordingly, I deny Sterling's motion to dismiss the false imprisonment count.

### 2. GGP

GGP argues that the false imprisonment claim against it should be dismissed because Wade fails to plead that the Mall Security Individual Defendants actually confined Wade or possessed the requisite intent to do so. (ECF No. 45-1 at 14.) GGP's first argument rests entirely on admissions in Wade's pre-deposition suit, which the Court may not consider to the extent they contradict the allegations of the complaint. (*Id*.) In any event, those admissions—that Wade was not handcuffed, placed under arrest, or told he could not leave—do not foreclose a false imprisonment claim. *See Donroe*, 186 Conn. at 267 (formal arrest and lengthy detention not

---

[7] Wade also argues in his opposition that the Kay Jewelers Individual Defendants "directed the police to find and stop or detain the Plaintiff," but this statement is not supported by the cited portion of the complaint. (ECF No. 46 at 21.)

required).  Wade's complaint alleges facts showing that the Mall Security Individual Defendants confined him, specifically:

> Jane Doe 3 and John Doe 1 and Police Officer Decker surrounded Plaintiff, with Officer Decker in front facing Plaintiff and Jane Doe 3 and John Doe 1 on the other side of Plaintiff, confining Plaintiff within a space at Buckland Hills Mall, forcing Plaintiff to stay in the space, from where he could not leave

(Am. Compl. at ¶ 26.)  The case GGP cites, *Richardson v. Costco Wholesale Corp.*, also addressed a motion for summary judgment, which the Court granted because the undisputed evidence showed that the plaintiffs knew that they could leave their supposed confinement by exiting through the employee door, notwithstanding the fact it would set off an alarm.  *See* 169 F. Supp. 2d 56, 61 (D. Conn. 2001).  By contrast, GGP does not point to any allegations in the complaint indicating that Wade's confinement was voluntary.

GGP's second argument about its lack of intent is easily addressed.  As discussed above, the complaint alleges that the Mall Security Individual Defendants, along with Officer Decker, confined Wade.  Accordingly, Wade has sufficiently alleged that GGP acted with the "purpose of imposing a confinement" on Wade.  Accordingly, I will not dismiss the false imprisonment claim against GGP.

### C.    Defamation *Per Se* (Sterling and GGP)

"To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627 (2009).  For defamation *per se*, "the [defamation] must be one which charges a crime which involves moral turpitude or to which an infamous penalty is attached," in other words, "that the crime be a chargeable offense which is punishable by

imprisonment." *Skakel v. Grace*, 5 F. Supp. 3d 199, 206 (D. Conn. 2014) (citation omitted). "In the case of a statement that is defamatory per se, injury to a plaintiff's reputation is conclusively presumed such that a plaintiff need neither plead nor prove it." *Id.* at 207. "Whether a statement is defamatory per se is a question of law for the court." *Id.* (citation omitted). "[T]ruth is an affirmative defense to defamation." *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 228–229 (2004)).

Sterling first argues that Wade has not alleged any harm to his reputation. (ECF No. 43 at 38.) But the complaint alleges that Sterling made the defamatory statements that Wade had "been robbing [Kay Jewelers store] for three months" and "ATTEMPTED TO ILLEGALLY USE A CREDIT CARD IN [KAY JEWELERS] STORE." (ECF No. 36 at ¶ 73.)[8] Sterling's argument must fail because Wade has alleged defamatory statements accusing him of crimes potentially punishable by imprisonment, *i.e.* larceny or illegal use of a credit card, *see* Conn. Gen. Stat. §§ 53a-119, 53a-128c *et seq.*, and thus reputational harm is conclusively presumed.

Sterling next argues that Wade does not allege a defamatory statement was published about him, reasoning that "[c]onfusing an innocent person with a guilty person does not constitute a defamatory statement identifying the innocent person." (ECF No. 43 at 38–39.) While it is true that Wade has not alleged any facts showing that the Kay Jewelers Individual Defendants *lied* in reporting their suspicions, deliberate falsity is not required to prove defamation *per se* where the plaintiff is not a public figure or is not seeking punitive damages.[9] *See Gambardella*, 291 Conn. at 628, 630 (noting that a plaintiff who is a public figure or who is seeking punitive damages must

---

[8] The Court notes that this paragraph selectively edits the statement provided in full elsewhere in the complaint, but the distinction does not matter for these purposes.

[9] Thus, while the lack of allegations suggesting deliberate falsity or reckless disregard forecloses the plaintiff's request for punitive damages (*see* Am. Compl. at 17, ¶ 3), it does not defeat his claim altogether.

show that the defendant published a defamatory statement with at least "reckless disregard for its truth"). Moreover, Sterling's brief does not adequately argue that Wade failed to allege the required mental state, because Sterling squarely raised the issue for the first time only on reply. (ECF No. 53 at 6.)[10] *See United States v. Pepin*, 514 F.3d 195, 203 n.13 (2d Cir. 2008) (stating that generally, a court does "not consider issues raised in a reply brief for the first time because if a [party] raises a new argument in a reply brief [the opposing party] may not have an adequate opportunity to respond to it."). Further, none of the cases cited by Sterling stand for the proposition that a defamatory statement about a wrongly identified plaintiff is inactionable, as opposed to statements that do not mention the plaintiff at all. *See Sorensen v. Fayerweather Yacht Club, Inc.*, No. CV136033440S, 2013 WL 6989418, at *10 (Conn. Super. Ct. Dec. 13, 2013 (dismissing defamation claims brought by two plaintiffs where "there are no allegations of defamatory communications made to third parties concerning anyone other than [a third plaintiff]"); *Devone v. Finley*, No. 3:13-CV-00377 CSH, 2014 WL 1153773, at *9 (D. Conn. Mar. 20, 2014) (dismissing defamation claim to the extent the defamatory statements were about plaintiff's son or the police department, not the plaintiff); *Glover v. Glover*, No. CV085025507S, 2011 WL 3211180, at *2 (Conn. Super. Ct. June 22, 2011) (email "to the effect that the author agrees with his sister, that the property should not be sold" did not identify plaintiff). Both allegedly defamatory statements, read in full, do identify *Wade* (albeit not by name) as a suspect in the robberies, credit card fraud, and possible ID theft at the Kay Jewelers Store. (*See* Am. Compl. at ¶¶ 20, 35, 73). Accordingly, the defamatory statements were about Wade.

---

[10] I do not find that Sterling raised this argument in response to Wade's opposition, and it clearly differs from the "statements *about* Wade" argument raised in Sterling's opening brief. (ECF No. 43 at 39–40.)

The defamatory statements alleged against GGP, however, were literally true and thus are not actionable. (*See* ECF No. 45-1 at 15.) Wade's defamation count against GGP, read in light of the rest of the complaint, is premised on two statements: (1) that Jane Doe 3 told Wade that "a Kay Jewelers' employee . . . called with a description of Plaintiff, Wade as the one that's been robbing them for three months" (Am. Compl. at ¶¶ 20, 73), and (2) the police were "CALLED BY THE MALL SECURITY BECAUSE A MALE WAS IDENTIFIED BY AN EMPLOYEE OF KAYS JEWELERS AS A SUSPECT WHO ATTEMPTED TO ILLEGALLY USE A CREDIT CARD IN THEIR STORE LAST WEEK AND POSSIBLY ID THEFT." (Am. Compl. at ¶¶ 51, 73.) Drawing all inferences in Wade's favor, both statements are true, as these allegations state that the Kay Jewelers Individual Defendants identified Wade to the Mall Security Individual Defendants, who reported to the police the fact of Wade's identification.[11] (*Id.*) Although truth is ordinarily an affirmative defense to a defamation action, I find that the facts Wade alleges show that the statements made by the Mall Security Individual Defendants—allegedly GGP's agents—were true. *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer."). Accordingly, I DISMISS Wade's defamation *per se* claim against GGP, but Wade may proceed on his claim against Sterling.

### D. 42 U.S.C. § 1981 "Equal Benefits" Claim (Sterling)

42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and

---

[11] Jane Doe 3 made the first statement to Wade, not a third party, and so the defamation claim against GGP based on that statement fails on this ground too.

property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a § 1981 claim, "plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). When the enumerated activity is plaintiff's deprivation of the "full and equal benefit of all laws and proceedings," plaintiff must (1) allege racial animus; (2) "identify a relevant law or proceeding for the 'security of persons and property;'" and (3) allege "that defendants have deprived them of 'the full and equal benefit' of this law or proceeding." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003) (citing 42 U.S.C. § 1981(a)).

Sterling argues that Wade's "equal benefits" claim under 42 U.S.C. § 1981 must be dismissed because Wade does not allege specific facts showing racial animus or allege that Sterling deprived him of any law for the security of persons. (ECF No. 43 at 24–31.) Wade responds that he has sufficiently alleged discriminatory intent and that his false imprisonment and defamation *per se* tort claims supply the legal basis for his claim. (ECF No. 46 at 6–15.) Because Wade has alleged that he is member of a racial minority (Am. Comp. at ¶¶ 7, 13), and because I have found Wade has sufficiently alleged the torts of both false imprisonment and defamation *per se* against Sterling, which I assume without deciding supply a sufficient basis to meet the second and third elements of the *Phillips* test, I examine only whether Wade has sufficiently pleaded racial animus. *See Bishop v. Best Buy*, Co. Inc., No. 08 CIV. 8427 LBS, 2010 WL 4159566, at *5 (S.D.N.Y. Oct. 13, 2010) (denying motion to dismiss 1981 claim where plaintiff "sufficiently allege[d] the torts

of assault and false imprisonment"), *reconsideration on other grounds,* 2011 WL 4011449 (S.D.N.Y. Sept. 8, 2011).

In order to survive a motion to dismiss on a section 1981 claim, a plaintiff must specifically allege the "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "A plaintiff's 'naked allegation' of racial discrimination on the part of a defendant is too conclusory to survive a motion to dismiss." *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988); *see also Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) ("[B]ald assertions of discrimination—unsupported by any meaningful comments, actions, or examples of similarly-situated persons outside of the Plaintiff's protected class being treated differently—are insufficient to survive a motion to dismiss").

Wade has made only conclusory allegations concerning the discriminatory intent of the Kay Jewelers Individual Defendants (the only defendants against whom he asserts his § 1981 claim). Wade's allegations of the Kay Jewelers Individual Defendants' racial animus are essentially that (1) "even though [they] were blacks," they identified Wade as the suspect because "they . . . saw him as criminal because of the color of his skin and . . . Plaintiff fit their idea of a shoplifter," and (2) they "describ[ed] the shoplifter who attempted to illegally use a credit card and who has been robbing Kay Jewelers for three months, as [Wade], the description consisting solely of Plaintiff, himself, a black, African-American, male, constitute racial profiling and intent to discriminate." (ECF No. 36 at ¶¶ 41, 57 (alterations omitted).) These allegations are not sufficient to plead racial animus, because they simply recast *Wade's belief* that the Kay Jewelers Individual Defendants singled him out because of his race. *See Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) (affirming dismissal of § 1981 claim containing only "conclusory allegations that the defendants violated [plaintiff's] rights 'because of their discriminatory intent' and 'based

on his race and color.'"). Wade alleges no specific facts to support this conclusion, such as "meaningful comments, actions, or examples of similarly-situated persons outside of the Plaintiff's protected class being treated differently." *Fouche*, 64 F. Supp. 3d at 457; *cf. Bishop*, 2010 WL 4159566, at *6 (denying motion to dismiss on equal benefit claim where plaintiff alleged that Caucasian and non-African American were not subjected to discriminatory treatment and cited specific, racially-motivated comments by defendants). Nor does he allege anything the Kay Jewelers Individual Defendants did or said that suggests that they "saw him as a criminal because of the color of his skin" or that he "fit their idea of a shoplifter." Moreover, even his conclusory allegations are expressly contradicted by other allegations that suggest that the Kay Jewelers Individual Defendants identified Wade because he fit the description of a particular suspect, not because of his race. (*See* Am. Compl. ¶¶ 20, 22, 42.)

Wade also points to his allegation that "Kay Jewelers' top management practice and believe in discrimination (see, e.g., Jock *et al v. Sterling Jewelers Inc.*, before the American Arbitration Association), creating a corporate culture where Kay Jewelers store employees routinely and disproportionately discriminate leading to racial profiling of African-Americans and people of color for suspicion of criminal activity." (ECF No. 46 at 9 (citing Am. Compl. at ¶ 52).) This allegation fares no better, because, in addition to pleading a vague "corporate culture" of racial discrimination without specific examples, Wade does not supply any facts alleging a causal link between the alleged "corporate culture" and the specific discriminatory actions taken by the Kay Jewelers Individual Defendants. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (citation omitted) ("[I]n order to make out a claim for individual liability under

Section 1981, a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.'").[12]

Wade cites *Martin v. J.C. Penney Corp.*, 28 F. Supp. 3d 153 (E.D.N.Y. 2014), and *Phillip*, 316 F.3d 291, in support of his argument that the amended complaint sufficiently pleads racial animus. (ECF No. 46 at 7–8.) *Martin* involved a summary judgment motion, and the Court concluded that the jury could infer that "defendants' surveillance of plaintiffs and their alleged failure to conform with store policy" prior to detaining a suspected shoplifter could support a finding of discriminatory intent. *Id.* at 157–58. Even if *Martin* had applicability to pleading standards, the Kay Jewelers Individual Defendants are not alleged to have surveilled Wade, and Wade does not allege any policy that the Kay Jewelers Individual Defendants failed to follow. Moreover, *Phillip*, though pre-*Twombly*, actually supports my conclusion that Wade's § 1981 claim fails. There, the Second Circuit vacated a grant of a motion to dismiss where the plaintiff had specifically alleged that "the plaintiffs were singled out of a group that apparently also contained non-minority students." *Phillip*, 316 F.3d at 299. As discussed above, Wade makes no allegations at all that he was singled out for disparate treatment relative to shoppers of other racial groups.

Accordingly, Wade has not sufficiently pleaded racial animus, and so his "equal benefit" claim against Sterling is DISMISSED.

---

[12] The cited arbitration also appears to concern discrimination on the basis of gender, not race. *See Jock v. Sterling Jewelers Inc.*, 284 F. Supp. 3d 566, 568 (S.D.N.Y. 2018) (noting allegations that "Sterling discriminated against them in pay and promotion on the basis of their gender").

E.      IIED (Sterling)

To prevail on a claim for intentional infliction of emotional distress under Connecticut law, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000). Sterling argues that the Amended Complaint does not allege the Sterling employees' intent or allege that Sterling's employees committed extreme and outrageous conduct by calling mall security. (ECF No. 43 at 34–36; ECF No. 53 at 6–7.) Wade argues that the amended complaint adequately pleads intent, and submitting a false police report constitutes extreme and outrageous conduct. (ECF No. 46 at 25–28.)

Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *See Appleton*, 254 Conn. at 210. Only where reasonable minds disagree does it become an issue for the jury. *Id.* The general rule is that the conduct must "be[] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 211.

 Connecticut courts have held that a report to the police typically does not constitute the type of "extreme and outrageous" conduct necessary to support a claim for intentional infliction of emotional distress. *See Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 504 (D. Conn. 2006) (collecting cases)*; see Pantaleo v. Ravski*, No. CV 920326931, 1997 WL 94103, at *5 (Sup. Ct. Feb. 14, 1997) ("[C]ourts in Connecticut and elsewhere have concluded that calling the police to report suspected wrongdoing normally does not constitute 'extreme and outrageous' conduct

sufficient to impose liability for intentional infliction of emotional distress.").  There is of course

no bright line rule, and "the court must look to the specific facts and circumstances of each case in

making its decisions." *Menon v. Frinton*, 170 F. Supp. 2d 190, 198 (D. Conn. 2001).  Here, all the

complaint alleges is that the Kay Jewelers Individual Defendants made a report to mall security

that they believed Wade was the individual who they suspected committed various crimes in their

store and directed the police to Wade.  (*See, e.g.*, Am. Compl. at ¶¶ 20, 27, 35.)  As discussed

above, there are no facts pled to suggest that the Kay Jewelers Individual Defendants deliberately

made false statements to anyone to induce Wade's detention or arrest.  Even if their report was

incorrect and negligently made, that conduct was not so extreme or outrageous to offend societal

norms.  Stores must regularly report suspected shoplifters or other crimes, and no arrest or other

action against Wade allegedly resulted from the report.  *See Bozelko v. Milici*, No.

NNHCV115033844S, 2013 WL 1277295, at *14 (Conn. Super. Ct. Mar. 11, 2013) (collecting

cases for the proposition that "[w]hether such allegations are sufficiently extreme and outrageous

to survive a motion to strike depends, at least in part, on the seriousness of the offense reported to

the police"); *Bremmer-McLain v. City of New London*, No. CV115014142S, 2012 WL 2477921,

at *10 (Conn. Super. Ct. June 1, 2012) (granting motion to strike where plaintiffs did not allege

facts showing that the "report to the police was false and misleading" or "that either plaintiff was

arrested or that any other action was taken as a result of the false police report."), *aff'd*, 143 Conn.

App. 904 (2013).

The two cases Wade cites in his complaint and opposition are not to the contrary.  (Am.

Compl. at 15 n.3; ECF No. 46 at 27–28.)  In *Crocco*, the Court found that reasonable minds could

differ on whether the undisputed evidence that defendants had "*knowingly* report[ed] false

information to [the police] so as to give the impression that [plaintiff] was stalking or threatening

them would constitute extreme and outrageous conduct" where plaintiff was ultimately arrested. *Crocco*, 421 F. Supp. 2d at 505 (emphasis added). In *Jezierny*, the defendant made false harassment report to the police "to achieve a vindictive goal," *i.e.* to get plaintiff arrested and criminally prosecuted for a dispute over a chicken coop. 2005 WL 2496525, at *3 (Conn. Super. Ct. Aug. 24, 2005). Here, Wade has not alleged that the Kay Jewelers knowingly made a false police report, or that any arrest or prosecution occurred as a result of that report. Because Wade does not allege outrageous conduct, I grant the motion to dismiss his IIED claim.

### F. NIED (Sterling and GGP)

To show negligent infliction of emotion distress under Connecticut law, plaintiff must prove "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). "The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm." *Stancuna v. Schaffer*, 122 Conn. App. 484, 490 (2010). "In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm." *Id.*

Both Sterling and GGP argue that Wade does not allege that they should have foreseen that their conduct was likely to cause emotional distress severe enough that it might result in illness or

bodily harm.  (ECF No. 43 at 43; ECF No. 45-1 at 17–18.)[13]  Wade responds that the complaint alleges that his emotional distress was foreseeable because both the Kay Jewelers Individual Defendants and Mall Security Individual Defendants had to know that the police would come when they reported his supposed crimes (ECF No. 46 at 29; ECF No. 50 at 16; Am. Compl. at ¶¶ 36, 38, 40; *see also id.* at ¶¶ 27, 39, 40, 44, 46–49.)

Although the Court acknowledges that Wade's allegations are thin, they sufficiently allege that it was foreseeable that the defendants' conduct would cause Wade emotional distress likely to lead to illness or bodily harm.  Wade has alleged (1) that both the Kay Jewelers Individual Defendants and the Mall Security Individual Defendants knew or should have known that Wade's detention was likely to result from their conduct (Am. Compl. at ¶¶ 38–40); (2) that at the time of his detention, "[Wade] was shaking, shaking the whole entire time. Anxiety was [sic] take over. [Wade] was so shaken . . . ." (*id.* at ¶ 49); (3) that Wade has "been scarred" and "look[s] [back at the incident] at every day," (*id.* at ¶ 48); and (4) that Wade suffers as a result of the incident, among other things, "embarrassment, anxiety, stress, flashbacks, anger and emotional distress" requiring medical attention.  (*Id.* at ¶¶ 88, 90.)  In combination with Wade's allegation that the defendants' conduct "was reasonably foreseeable to cause emotional distress and in fact caused emotional distress to [Wade]," (*id.* at ¶ 86), I conclude that Wade has sufficiently pleaded that defendants

---

[13] Sterling makes additional arguments that Wade does not allege the Kay Jeweler Individual Defendants' conduct created an "unreasonable risk" of harm or that such conduct caused Wade's injuries, but such arguments appear to be premised on Wade's deposition admissions.  (*See* ECF No. 43 at 43.)  GGP similarly argues that Wade's reaction was "unreasonable" in light of the Mall Security Individual Defendants' good faith conduct, but in light of Wade's specific pleadings about the reasonable foreseeability of severe emotional distress discussed below, it would be premature to decide this argument on a motion to dismiss.  (ECF No. 45-1 at 22.)

should have foreseen that their conduct was likely to cause emotional distress severe enough that it might result in illness or bodily harm.

I therefore reject Sterling and GGP's arguments to dismiss the count for negligent infliction of emotional distress against them.

### G.  Negligent Supervision (Sterling and GGP)

To state a negligent supervision claim under Connecticut law, "plaintiff must plead and prove that she suffered an injury due to the defendant's failure to supervise an employee whom the defendant had [a] duty to supervise." *Brooks v. Sweeney,* 299 Conn. 196, 209 n.12 (2010) (citing *Roberts v. Circuit–Wise, Inc.*, 142 F. Supp. 2d 211, 214 (D. Conn. 2001)).  "Duty is a legal conclusion about relationships between individuals, made after the fact, and [is] imperative to a negligence cause of action." *Doe v. Saint Francis Hosp. & Med. Center*, 309 Conn. 146, 174 (2013) (citation omitted).  The "general rule" is that one has "no legal obligation to protect another," but an exception "may arise when the defendant's own conduct creates or increases the foreseeable risk that such other person will be harmed by the conduct of a third party." *Id.*

Sterling argues that the amended complaint does not allege any facts to show that Sterling knew or reasonably should have known of any of its employees' propensity to engage in tortious conduct.  (ECF No. 43 at 39–40; *see also* ECF No. 54 at 8 (GGP raises same argument on reply).) Wade responds that the Amended Complaint alleges that Sterling Jewelers "created a corporate culture where Kay Jewelers store employees routinely and disproportionately discriminate leading to racial profiling of African-Americans and people of color for suspicion of criminal activity." (ECF No. 46 at 32 (citing Am. Compl. at ¶ 51).)  Accordingly, Wade argues that "Sterling Jewelers

knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct." (*Id.*)[14]

Both parties are mistaken that Wade must plead that the defendants knew or should have known of an employee's "propensity" to engage in that type of tortious conduct to establish that such conduct was foreseeable, and thus that the defendants had a duty to prevent it. In *Saint Francis Hosp. & Med. Ctr.*, the Connecticut Supreme Court held that the trial court did not need to give a jury instruction on propensity in a negligent supervision claim against an employer because "[t]he criminal misconduct of a third party may be foreseeable under the facts of a particular case . . . without a showing that the defendant had such actual or constructive knowledge of the third party's criminal propensity." 309 Conn. at 172. In other words, "proof of actual or constructive knowledge of propensity is but one way to establish that the criminal misconduct of the third party was foreseeable." *Id.* at 173. Accordingly, Wade did not need to plead that the defendants knew or should have known its employees had a "propensity" for the type of tortious conduct alleged to establish defendants' duty to prevent such conduct.

For its part, GGP argues that the Mall Security Individual Defendants are not GGP employees, and both Sterling and GGP also assert that Wade has not adequately pleaded that their employees committed any tortious conduct. (ECF No. 43 at 45; ECF No. 45 at 22–23.) Because I have already concluded that Wade has pleaded that the Mall Security Individual Defendants were

---

[14] Sterling also argues that the amended complaint does not allege any facts to show that Sterling inadequately supervised its employees, but does not press this argument on reply (ECF No. 53 at 9–10). In any event, notwithstanding Wade's conclusory "corporate culture" allegation, the amended complaint does plausibly allege that defendants failed to adequately train or supervise its employees on how to prevent "targeting African-American or people of color . . . for suspected criminal activity" or falsely accusing, reporting to law enforcement, or detaining customers for shoplifting, credit card fraud, or other criminal activity. (*See* Am. Compl. at ¶¶ 53, 92, 93.)

the "security/loss prevention personnel and/or agents" of GGP (Am. Compl. ¶ 12), and that Wade states false imprisonment and NIED claims against both defendants, I reject these arguments.

### H.    PSC's Third-Party Motion to Dismiss

GGP impleaded PSC as the alleged employer of the Mall Security Individual Defendants and asserted claims for negligence, common law indemnification, and contractual indemnification. (ECF No. 57.)  PSC moves to dismiss the negligence and common law indemnification counts for failure to state a claim.  (ECF No. 70.)

First, PSC argues that the negligence count does not state a claim because that count asserts that PSC is liable to *Wade*, not GGP.  (ECF No. 70-1 at 4; *see also* ECF No. 57 at ¶¶ 10–11 (alleging that "if the plaintiff [Wade]" was harmed, "it was due to the negligence . . . of PSC" and any losses were "directly and caused proximately caused" by PSC).)  I agree.  While Rule 14 authorizes third-party complaints where the "third party's liability must be dependent upon the outcome of the main claim or the third party must be 'secondarily liable to the defending party,'" such claims must still assert that the third-party defendant is liable to the *third-party plaintiff*.  *See Hopkins v. Kawasaki Rail Car, Inc.*, No. 3: 17-CV-839 (CSH), 2017 WL 3715247, at *10 (D. Conn. Aug. 28, 2017) (asserting claims for indemnification, contribution, and apportionment to the third-party plaintiff); *Am. Nat. Fire Ins. Co. v. A. Secondino & Sons*, No. CIV.A. 3:92-629(JAC), 1995 WL 253085, at *3 (D. Conn. Apr. 28, 1995) ("[A] third-party plaintiff seeking to implead a third party must allege that a third-party defendant is liable to the third-party plaintiff.").  Because GGP asserts a direct negligence claim against PSC, but does not actually assert that PSC is liable to GGP, GGP fails to state a claim.  *See, e.g., Toberman v. Copas*, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992) ("A defendant sued for negligence, for example, cannot implead a third party whose negligence was totally responsible for plaintiff's injury. When a third party's conduct

furnishes a complete defense against the defendant's liability, the defendant may raise that conduct defensively in his answer but may not use it as a foundation for impleader." (internal quotation marks and citation omitted).).  GGP's negligence claim is therefore dismissed.

Second, PSC argues that GGP's common law indemnification claim should be dismissed because the third party complaint does not contain any allegation about exclusive control by PSC. (ECf No. 70-1 at 3.)  To assert a common law indemnification claim under Connecticut law, a defendant/third-party plaintiff must allege that: "(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent." *Smith v. City of New Haven*, 258 Conn. 56, 66 (2001) (citing *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 416 (1965).  "While the question of exclusive control is ordinarily a question of fact to be determined by a jury," a claim may be dismissed as a matter of law where the allegations, evaluated against the backdrop of the plaintiff's complaint, "could not result in a jury finding that the third-party defendants were in exclusive control over the situation."  *Pennsylvania Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield, CT*, No. 3:11-CV-650 VLB, 2012 WL 3779140, at *5 (D. Conn. Aug. 30, 2012) (citations omitted).

This is not such a case.  The Third-Party Complaint alleges that each count of Wade's complaint "alleges acts or omissions of security officers" who were "employed by, trained by, and worked at the direction of PSC."  (ECF No. 57 at ¶¶ 16, 17.)   If proven, the allegations in GGP's third-party complaint could result in a jury finding that PSC, not GGP, was in exclusive control of

the Mall Security Individual Defendants who committed the tortious conduct alleged in the Amended Complaint. I further agree with GGP that this case is distinguishable from *Pennsylvania Mfrs. Indem. Co. v. Cintas Fire Prot. & Fire Sys. of Springfield*. In that case, the court dismissed an indemnification claim against the installer of a deficient sprinkler system where parties did not dispute that the installer had no contact with the sprinkler system for almost a decade, and the plaintiff's negligence claims were premised on acts by the third-party plaintiff that would be inconsistent with the installer's exclusive control. *Pennsylvania Mfrs. Indem. Co*., No. 3:11-CV-650 VLB, 2012 WL 3779140, at *6 (D. Conn. Aug. 30, 2012). Here, the parties actively dispute PSC's role, and Wade's claims are not premised on any specific conduct by GGP that is inconsistent with PSC's exclusive control—in other words, Wade's proving his allegations that the Mall Security Individual Defendants falsely imprisoned him would not necessarily preclude a finding that PSC had exclusive control of them. (*See* Am. Compl. at ¶ 12 (alleging only that the Mall Security Individual Defendants were "security/loss prevention personnel and/or agents of . . . GGP"). I therefore deny PSC's motion to dismiss as to this count.

## IV.    CONCLUSION

For the foregoing reasons, Sterling's (ECF No. 42) and GGP's (ECF No. 45) motions to dismiss the amended complaint (ECF No. 36) are GRANTED in part and DENIED in part.  The claims for violation of 42 U.S.C. § 1981 (Count One) and intentional infliction of emotional distress (Count Four) are DISMISSED in full.  The defamation *per se* claim against GGP (Count Three) is DISMISSED.   In addition, PSC's motion to dismiss the third-party complaint is GRANTED in part and DENIED in part.  (ECF No. 70.)  GGP's negligence claim (Count One) against PSC is DISMISSED.  Finally, the Clerk is directed to terminate Kay Jewelers, Inc. as a defendant.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 17, 2018